## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAZARO MARTINEZ QUINTANA,** | ] | |
| | ] | |
| **Petitioner,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:19-cv-8045-ACA** |
| | ] | |
| **UNITED STATES OF AMERICA,** | ] | |
| | ] | |
| **Respondent.** | ] | |

## MEMORANDUM OPINION

Before the court is Lazaro Martinez Quintana's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. (Docs. 1, 2). Mr. Quintana seeks the vacatur of his guilty plea, conviction, and sentence based on ineffective assistance of counsel. Because Mr. Quintana cannot establish that any deficiency on his trial counsel's part prejudiced him, the court **WILL DENY** his § 2255 motion.

## I.    BACKGROUND

Mr. Quintana is a Cuban citizen who came to the United States legally in 2012. (Doc. 8-1 at 2). In his § 2255 motion, he alleges without support that he was admitted "as a political refugee fleeing his home country of Cuba." (Doc. 2 at 1).

In August 2018, a grand jury indicted Mr. Quintana on conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 371, 1029(a)(1); access device fraud, in violation of § 1029(a)(1); and possession of device-making equipment, in

violation of § 1029(a)(4). *See United States v. Quintana*, no. 2:18-cv-00414-ACA-JEO-2, Doc. 1 (N.D. Ala. Aug. 29, 2018).[1]  He entered a plea agreement, under which he agreed to plead guilty to the conspiracy charge and the possession charge. (Criminal Doc. 19 at 1).  For its part, the government agreed to, among other things, dismiss the charge of access device fraud.  (*Id.* at 1, 5–6).  The plea agreement contained a factual proffer to which Mr. Quintana stipulated.  (*Id.* at 3–4).  Among other facts, he agreed that the government had found his codefendant and him responsible for a total of $69,464.88 in fraudulent transactions.  (*Id.* at 4).

In the plea agreement, Mr. Quintana "recognize[d] that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. . . . [D]efendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on [his] immigration status."  (Criminal Doc. 19 at 12).  However, he "nevertheless affirm[ed] that he want[ed] to plead guilty regardless of any immigration consequences that he plea [sic] may entail, even if the consequence is his automatic removal from the United States."  (*Id.*).

In connection with his guilty plea, Mr. Quintana executed a guilty plea advice of rights certification.  (Criminal Doc. 18).  In that certification, he initialed that he

---

[1] For the sake of brevity, the court will refer to docket entries in the criminal case as "Criminal Doc. ___."

understood that "upon completion of any term of imprisonment, [he] may be remanded to the custody of the United States Marshal for surrender to an authorized Bureau of Immigration and Customs Enforcement [("ICE")] official for deportation proceedings in accordance with the Immigration and Nationality Act." (*Id.* at 8).

At Mr. Quintana's change of plea hearing, the court advised him that "if you are determined not to be a citizen of the United States, you may be subject to deportation because of the plea of guilty that you enter today." (Criminal Doc. 40 at 10). Mr. Quintana stated that he understood. (*Id.*). After a colloquy with Mr. Quintana, the court accepted his guilty plea and adjudged him guilty of the conspiracy charge and the possession charge. (*Id.* at 20).

At Mr. Quintana's sentencing hearing, trial counsel stated: "He is a citizen of Cuba. It's my understanding that there will be an ICE detainer on him following his execution [sic] of the instant sentence. As far as I know, the United States does not deport to Cuba, so at some point he will be, I suppose, released from ICE custody . . . ." (Criminal Doc. 41 at 5). The government, in turn, stated: "I did call and speak with ICE, and they do plan to lodge a detainer once the conviction is in place following the hearing. So I do anticipate that he will go into ICE custody for a short period of time. But, again, as [trial counsel] stated, ICE does not deport Cubans, so he will be released at some point." (*Id.* at 10). At the conclusion of the hearing, the court sentenced Mr. Quintana to twelve months and one day for each

count, to be served concurrently. (Criminal Doc. 38 at 2). Mr. Quintana did not file a direct appeal.

As it turns out, trial counsel and the government's statements during the sentencing hearing that the United States does not remove Cuban citizens is incorrect. On May 7, 2019, ICE arrested Mr. Quintana and recommended starting removal proceedings on the basis that he had been convicted of an aggravated felony and a crime involving moral turpitude under the Immigration and Nationality Act ("INA"). (Doc. 8-1 at 2–3).

Several months later, Mr. Quintana filed a petition for writ of error coram nobis, under the All Writs Act, 28 U.S.C. § 1651(a). (Criminal Doc. 42). The court issued an order to show cause, noting that because Mr. Quintana remained under a sentence of supervised release, he had an alternative statutory remedy available to him in the form of a motion to vacate sentence under 28 U.S.C. § 2255. (Criminal Doc. 43). Mr. Quintana, through habeas counsel, moved the court to construe his coram nobis petition as a § 2255 motion (criminal doc. 44), which the court did (criminal doc. 45).

In response to the § 2255 motion, the government submitted an affidavit by trial counsel, who attests that before the change of plea hearing, he advised "Mr. Quintana that entering a guilty plea to a felony offense could have immigration consequences, up to and including deportation." (Doc. 6-2 at 1). However, he also

attests that he "did not expect Mr. Quintana to be deported to Cuba, and [he] did tell Mr. Quintana that, to [his] knowledge, the United States did not deport Cuban citizens to Cuba." (*Id.*). The affidavit does not make clear when trial counsel told Mr. Quintana that the United States did not remove Cuban citizens to Cuba. (*See id.*). In his § 2255 motion, Mr. Quintana alleges that trial counsel made that statement "prior to [Mr. Quintana] entering his guilty plea and again during his sentencing hearing." (Doc. 2 at 2).

## II.   DISCUSSION

In his § 2255 motion, Mr. Quintana makes one claim: that trial counsel provided ineffective assistance by failing to properly advise him about the immigration consequences of pleading guilty. (Doc. 2 at 3). Specifically, Mr. Quintana alleges that trial counsel performed deficiently by incorrectly advising him that the United States does not remove Cuban citizens to Cuba, and that advice prejudiced him by persuading him to enter a guilty plea instead of going to trial.[2]

---

[2] Mr. Quintana also appears to argue that he could have negotiated for a plea agreement requiring a sentence of less than one year and for a stipulation of a lower loss amount. (Doc. 2 at 7). With respect to the sentencing argument, although Mr. Quintana seems to assume that a sentence of one year or less would make his conviction something other than an "aggravated felony" for immigration purposes, the INA's definition of "aggravated felony" does not categorically require a sentence of over one year. *Compare* 8 U.S.C. § 1101(a)(43)(G) (specifically defining a theft or burglary offense as an aggravated felony when it involves a term of imprisonment of at least one year), *with id.* § 1101(a)(43)(M) (failing to provide any minimum term of imprisonment before a crime involving fraud or deceit can be considered an aggravated felony).

As to the argument that he could have negotiated for a lower loss amount, it is not clear that such a stipulation would prevent an immigration court from finding that his conviction was

(Doc. 2 at 3–4).  He states: "Had he known he would be subject to mandatory detention and removal as a result of his entry of a guilty plea, he would not have entered such plea under the terms and conditions set forth in the plea agreement because of the dangers associated with being forced to return to Cuba." (*Id.* at 3).

Section 2255(b) requires the court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  A movant is "entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).  But "a district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Id.* (quotation marks omitted).

To prevail on a claim of ineffective assistance of counsel, Mr. Quintana must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and that (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 684–91 (1984).  To establish deficient performance, the movant "must show that counsel's representation fell

_____

for an aggravated felony. *See Martin v. United States*, No. 18-12643, 2020 WL 543343, at *4 (11th Cir. Feb. 4, 2020) (stating that the immigration court must determine whether a fraud offense is an aggravated felony because part of that inquiry is whether the offense involves a loss to the victims in excess of $10,000, and in doing so the immigration court may look at "'the facts and circumstances underlying an offender's conviction'") (quoting *Nijhawan v. Holder*, 557 U.S. 29, 38–40 (2009)).  Even if the government stipulated to a loss amount under $10,000 for purposes of sentencing, it is possible that an immigration court could find that the loss amount exceeded that threshold, making the offense an aggravated felony.

below an objective standard of reasonableness under prevailing professional norms." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010). "Judicial scrutiny of counsel's performance must be highly deferential" and the court must presume "that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1. Deficient Performance

Mr. Quintana has alleged facts that, if proved, would establish that his trial counsel performed deficiently. The United States Supreme Court has specifically addressed ineffective assistance claims arising from trial counsel's advice about the immigration consequences of a guilty plea. In *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010), the Supreme Court held that trial counsel performs deficiently if he fails to inform his client about the risk of removal. In addition, where "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequences for [the defendant]'s conviction," an attorney can "easily determine[ ] that [the defendant's] plea would make him eligible for deportation simply from reading the text of the statute." *Id.* at 368. In that situation, where the attorney provides "false assurance that his conviction would not result in his removal from this country," the attorney has performed deficiently. *See id.* at 368–69.

But the Supreme Court acknowledged "[i]mmigration law can be complex, and it is a legal specialty of its own. . . .  When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369.  Accordingly, deficient performance based on failure to give correct advice about specific immigration consequences occurs only when "the deportation consequence is truly clear." *Id.*

In *Padilla*, the movant had been convicted of transportation of a large amount of marijuana.  559 U.S. at 359.  Under the Immigration and Nationality Act, removal is "presumptively mandatory," *id.* at 369, for any alien who has been convicted of violating any law "relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana."  8 U.S.C. § 1227(a)(2)(B)(i).  Because the statute is so clear about the consequence of a conviction for transportation of a large amount of marijuana, the *Padilla* Court held that it was "not a hard case in which to find deficiency."  559 U.S. at 368.

The government responds that this court can deny Mr. Quintana's motion on the basis that he has not alleged facts that would establish deficient performance because (1) trial counsel satisfied his duty to inform Mr. Quintana that he would undergo immigration proceedings, despite his admittedly incorrect advice that the proceedings would not result in removal; and (2) there is no evidence to suggest that

trial counsel gave that incorrect advice before Mr. Quintana entered his guilty plea. (Doc. 6 at 8, 11). Both of those arguments fail.

The most closely analogous case that the court has been able to find is *Hernandez v. United States*, 778 F.3d 1230 (11th Cir. 2015). In that case, the movant had pleaded guilty to a controlled substances offense. *Id.* at 1231. At the sentencing hearing—by necessity held after the change of plea hearing—trial counsel stated that he had "informed [the defendant] that based on the information that I know in my past experience with Cuban Defendants that generally immigration detainers are not issued for Cuban Defendants and generally they are not deported back to Cuba." *Id.* at 1231–32. The Eleventh Circuit held that the defendant had "alleged facts that, if true, would prove that his counsel's advice was deficient," particularly in light of the fact that "[t]he record corroborates [his] allegation because his counsel stated on the record that" in her experience the United States did not remove Cuban citizens to Cuba. *Id.* at 1233–34.

Here, as in *Hernandez*, trial counsel (and the prosecutor) stated on the record that Mr. Quintana's status as a Cuban citizen meant that he would not be removed. Moreover, it appears that, as in the *Hernandez* case, at least one of the charges to which Mr. Quintana agreed to plead guilty—the charge of conspiracy to commit access device fraud—constitutes an aggravated felony under the INA, making removal presumptively mandatory. *See* 8 U.S.C. § 1227(a)(2)(A)(iii); *see also id.*

§ 1229b(a) (disallowing cancellation of removal for any alien convicted of an aggravated felony).

The court notes that the Eleventh Circuit has recently held that convictions for access device fraud and aggravated identity theft were not clearly aggravated felonies for purpose of a *Padilla* analysis. *See Martin v. United States*, 949 F.3d 662, 665, 668–69 (11th Cir. 2020). This court finds the *Martin* decision distinguishable.

In *Martin*, the movant's plea agreement contained a stipulation that the overall loss from the scheme was more than $200,000. *Martin*, 949 F.3d at 666. But although he had been charged with both substantive offenses and a conspiracy offense, he pleaded guilty only to the substantive charges, which involved a smaller loss amount. *Id.* at 665, 668. The Eleventh Circuit explained that, because the INA's definition of an aggravated felony for a fraud offense requires the offense to involve a loss amount of more than $10,000, it was unclear whether an immigration court would find that the movant's convictions would qualify. *Id.* at 668. "[T]he total fraud loss [of over $200,000] was not tethered to the conduct [the defendant] took responsibility for at his plea" because he had not pleaded guilty to the conspiracy charge, and an immigration court might find that the convictions for the substantive offenses did not involve the requirement loss amount. *Id.* Thus, because of the uncertainty of the immigration consequences for the guilty plea to those offenses,

"counsel was required to advise [the movant] only that his pending criminal charges may carry a risk of adverse immigration consequences," which counsel had done. *Id.* at 665, 668.

Here, by contrast, Mr. Quintana pleaded guilty to conspiracy to commit access device fraud, and he stipulated that the total loss amount was $69,464.88. (Criminal Doc. 19 at 4). Thus, on its face, the offense to which Mr. Quintana was pleading guilty was an aggravated felony under the INA. *See* 8 U.S.C. § 1101(a)(43)(M)(i) (defining as aggravated felony as any offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000").

And contrary to the government's contention, the record does not conclusively establish that counsel gave the incorrect advice about the effect of Mr. Quintana's citizenship only after Mr. Quintana already entered his guilty plea. Mr. Quintana alleges that trial counsel made that statement before the change of plea hearing. (Doc. 2 at 2). Trial counsel's affidavit states only that at some point, he told Mr. Quintana "that, to [his] knowledge, the United States did not deport Cuban citizens to Cuba." (Doc. 6-2 at 1). That is insufficient to refute Mr. Quintana's allegation. Moreover, under *Hernandez*, it appears that counsel's incorrect statement about the immigration consequences at a sentencing hearing can warrant an evidentiary hearing on this kind of ineffective-assistance claim, even in the

absence of evidence establishing that counsel made a similar statement before the movant pleaded guilty. *Cf. Hernandez*, 778 F.3d at 1231–32, 1233–34.

Finally, the court notes that, to the extent that the government argues that the other warnings given to Mr. Quintana about the immigration consequences of his guilty plea cured any bad advice from trial counsel, such an argument relates to the prejudice prong, not to the deficient performance prong. Under *Padilla* and *Hernandez*, Mr. Quintana has alleged facts that, if true, would establish his trial counsel's deficient performance in advising him that he could not be removed because of his Cuban citizenship.

2. Prejudice

When challenging a guilty plea as invalid because of ineffective assistance, the movant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The *Padilla* decision did not issue any holding about the prejudice prong, but stated that "to obtain relief on [an ineffective-assistance claim involving a challenge to a guilty plea], a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." 559 U.S. at 372, 374; *see also Hernandez*, 778 F.3d at 1234.

The Supreme Court has acknowledged on several occasions that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Padilla*, 559 U.S. at 368 (alteration omitted) (quoting *INS v. St. Cyr*, 553 U.S. 289, 3223 (2001)). And in *Hernandez*, the Eleventh Circuit held that, where a movant alleges that "he would not have pleaded guilty if a plea would have 'automatically removed him from his family and from a Country he has called home all of his adult life,'" he has alleged facts that, if true, would establish prejudice, warranting an evidentiary hearing. *Hernandez*, 778 F.3d at 1234 (alterations omitted) (quoting the movant's allegation).

Here, Mr. Quintana expressly alleged in his § 2255 motion that "[h]ad he known he would be subject to mandatory detention and removal as a result of his entry of a guilty plea, he would not have entered said plea under the terms and conditions set forth in the plea agreement because of the dangers associated with being forced to return to Cuba." (Doc. 2 at 3). The government counters that Mr. Quintana cannot show that he would have made the decision not to plead guilty even if he had known that Cubans can be removed to Cuba because "he was repeatedly advised and confirmed awareness of [the immigration] consequences under oath prior to pleading guilty." (Doc. 6 at 12).

Specifically, Mr. Quintana's plea agreement recognized "that pleading guilty may have consequences with respect to his immigration status if he is not a citizen

of the United States. . . . [D]efendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on [his] immigration status." (Criminal Doc. 19 at 12). However, he "nevertheless affirm[ed] that he want[ed] to plead guilty regardless of any immigration consequences that he plea [sic] may entail, even if the consequence is his automatic removal from the United States." (*Id.* at 12). In addition, his guilty plea advice of rights certification indicated that he understood that "upon completion of any term of imprisonment, [he] may be remanded to the custody of the United States Marshal for surrender to an authorized Bureau of Immigration and Customs Enforcement official for deportation proceedings in accordance with the Immigration and Nationality Act." (Criminal Doc. 18 at 8). And finally, at Mr. Quintana's change of plea hearing, the court told him that "if you are determined not to be a citizen of the United States, you may be subject to deportation because of the plea of guilty that you enter today." (Criminal Doc. 40 at 10).

In *Hernandez*, the Eleventh Circuit held that the movant's allegation that he would not have pleaded guilty if he had known that he might be automatically removed from the United States would, if true, establish prejudice under *Padilla*. *Hernandez*, 778 F.3d at 1234. The *Hernandez* decision does not address whether the movant received any warnings like the ones that Mr. Quintana received in this case. However, the court's review of the district court proceedings in *Hernandez*

indicate that the movant in that case did not receive any advice about the immigration consequences other than his attorney's statement that he was not likely to be removed because of his Cuban citizenship.

In the *Hernandez* case, unlike in this case, the defendant pleaded guilty without the benefit of a plea agreement. *See United States v. Hernandez*, no. 1:08-cr-00189-TWT-RGV, Doc. 256 at 2 (N.D. Ga. Feb. 9, 2009). Moreover, the district court's Federal Rule of Criminal Procedure 11 colloquy with the defendant did not mention any immigration consequences. *See id.* at 3–22. Nor does the record reflect any kind of guilty plea advice of rights certification like the one that Mr. Quintana signed in this case.

This case is therefore distinguishable from *Hernandez* with respect to the prejudice prong of the ineffective-assistance test. In *Hernandez*, the only immigration-related advice that the defendant received was his attorney's statement that, in her experience, Cuban citizens were not deported to Cuba. 778 F.3d at 1232. By contrast, here, Mr. Quintana was repeatedly advised that he might face immigration consequences, although his trial counsel may have also advised him the Cuban citizens are not removed to Cuba. In particular, the court highlights the statement from the plea agreement in which Mr. Quintana "nevertheless affirm[ed] that he want[ed] to plead guilty regardless of any immigration consequences that he

plea [sic] may entail, even if the consequence is his automatic removal from the United States." (Criminal Doc. at 12).

The record refutes Mr. Quintana's allegation that he would not have pleaded guilty if he had known that he faced removal from the United States. In light of his repeated acknowledgement that he could face immigration consequences based on his guilty plea, he cannot show that he would not have pleaded guilty if counsel had correctly advised him that Cuban citizens do face removal to Cuba. *See Hill*, 474 U.S. at 59. Accordingly, an evidentiary hearing is not warranted on this claim, and the court **WILL DENY** the § 2255 motion without an evidentiary hearing. *Cf.* 28 U.S.C. § 2255(b); *Winthrop-Redin*, 767 F.3d at 1216.

## III. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Cases. The court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted).

Reasonable jurists could debate whether Mr. Quintana's specific allegation of prejudice is enough to warrant an evidentiary hearing under *Hernandez v. United States*, 778 F.3d 1230 (11th Cir. 2015). Accordingly, the court **WILL GRANT** a certificate of appealability on the question whether the court erred by summarily denying Mr. Quintana's claim that he received ineffective assistance based on his trial counsel's incorrect advice that the United States does not remove Cuban citizens to Cuba.

## IV. CONCLUSION

The court **WILL DENY** Mr. Quintana's § 2255 motion without an evidentiary hearing. The court **WILL GRANT** a certificate of appealability on the question whether the court erred by summarily denying Mr. Quintana's claim that he received ineffective assistance based on his trial counsel's incorrect advice that the United States does not remove Cuban citizens to Cuba.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this February 27, 2020.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE